UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

ROBERT RICHARD JONES,

                Petitioner,

    v.

PHILLIP VALDEZ, Warden, Idaho
Correctional Institution; and IDAHO
ATTORNEY GENERAL,

              Respondents.

Case No. 1:09-CV-132-MHW

**MEMORANDUM DECISION
AND ORDER**

      Pending before the Court in this habeas corpus action is Respondent Philip

Valdez's Motion for Partial Summary Dismissal. (Dkt. 11.) The Motion is now fully

briefed. The parties have consented to the jurisdiction of a United States Magistrate Judge

to enter final orders in this case. (Dkt. 7 & 13.) *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P.

73.

      Having fully reviewed the record, including the state court record, the Court finds

that the parties have adequately presented the facts and legal arguments in the briefs and

record and that the decisional process would not be significantly aided by oral argument.

Therefore, in the interest of avoiding further delay, the Court shall decide this matter on

the written motions, briefs, and record without oral argument. D. Idaho L. Civ. R. 7.1(d).

Accordingly, the Court enters the following Order granting in part and denying in part the

Motion to Dismiss.

## BACKGROUND

In 1980, the State brought charges against Petitioner and Jose Alfonso Martinez

(Martinez) for the murder of Troy Vance (Vance). In 1982, the charges were dismissed.

In 1989, Petitioner's former wife, Sherry Wystrach (Wystrach) came forward with

new evidence. As a result, a grand jury issued an indictment against Jones charging him

with the first degree murder of Vance.

Third Judicial District Judge Jim A. Doolittle presided over Petitioner's trial. A

jury found Petitioner guilty of first degree murder. The State sought the death penalty, but

the judge sentenced Petitioner to a fixed life term. Judgment was entered on June 24,

1991.

Through counsel, Petitioner pursued a motion for a new trial. It was denied by the

state district court, and no appeal was taken. (A-2, pp. 587-92 & 601-04.)

Through counsel, Petitioner pursued a direct appeal challenging his conviction and

sentence, where he did not obtain relief. (State's Lodgings B-1 through B-12.) While his

appeal was pending, Petitioner's counsel filed a second motion for new trial. (C-1, pp. 21-

31.) It was denied, and an appeal was taken. (D-1.) The denial of the motion was affirmed

on appeal. (D-7.)

Petitioner later filed a pro se post-conviction application. He was appointed counsel, and his counsel filed an amended post-conviction application on Petitioner's behalf. The State filed a motion to dismiss, and Third Judicial District Judge Sergio A. Gutierrez issued an order conditionally dismissing the post-conviction relief application on April 29, 1999. In response, Petitioner's counsel filed a "bifurcated response and objection to the state's motion to dismiss and the court's notice of intent to dismiss summarily" on June 11, 1999. Petitioner's counsel simultaneously filed a motion to amend and a second amended application. (E-1 & E-2.)

Judge Gutierrez denied the motion to amend on May 29, 2001. (E-2, pp. 272-81.) No action was taken on Petitioner's bifurcated response and objection for over three years, and the case was closed for inactivity. On December 30, 2004, Petitioner filed a motion to re-open the case, which was granted, and then Third Judicial District Judge Juneal C. Kerrick issued a decision dismissing the case. (E-2, pp. 326-33.) The dismissal and denial were affirmed on appeal by the Idaho Court of Appeals. Petitioner's petition for review with the Idaho Supreme Court was denied. (F-1 through F-18.)

Petitioner subsequently filed this federal habeas corpus action, and Respondent filed a motion for partial summary dismissal, now at issue.

**RESPONDENT'S MOTION TO DISMISS**

Respondent filed a Motion to Dismiss requesting dismissal of Claims A(3)-(6) and B in Petitioner's Petition for Writ of Habeas Corpus based upon the conclusory nature of the claims. (Dkt. 4.)   Respondent also requested dismissal of Claims A(2)-(4) and A(7), B, C, D, and E(1)-(4) and E(7) based upon the procedural default doctrine. After Respondent's Motion for Partial Summary Dismissal was filed, Petitioner filed an Amended Petition to attempt to cure some of the alleged defects in the original Petition.

In this Order, summary dismissal will be addressed in light of the Amended Petition, beginning with the procedural default inquiry.

**1.  Standard of Law Governing Summary Dismissal and Procedural Default**

Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court."   In such case, the Court construes the facts in a light most favorable to the petitioner. It is appropriate for the Court to take judicial notice of court dockets from state court proceedings. Fed. R. Evid. 201(b); *Dawson v Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

Habeas corpus law requires that a petitioner "exhaust" his state court remedies before pursuing a claim in a federal habeas petition. 28 U.S.C. § 2254(b). To exhaust a claim, a habeas petitioner must fairly present it as a federal claim to the highest state court for review in the manner prescribed by state law. *See O'Sullivan v. Boerckel*, 526 U.S.

838, 845 (1999). Unless a petitioner has exhausted his state court remedies relative to a particular claim, a federal district court cannot grant relief on that claim, although it does have the discretion to deny the claim. 28 U.S.C. § 2254(b)(2).

State remedies are considered technically exhausted, but not *properly* exhausted, if a petitioner failed to pursue a federal claim in state court and there are no remedies now available. *O'Sullivan*, 526 U.S. at 848. A claim may also be considered exhausted, though not properly exhausted, if a petitioner pursued a federal claim in state court, but the state court rejected the claim on an independent and adequate state law procedural ground. *Coleman v. Thompson*, 501 U.S. 722, 731-732 (1991). Under these circumstances, the claim is deemed "procedurally defaulted." *Coleman,* 501 U.S. at 731.

## 2.  Discussion of Procedural Default

### *Claim A(2)*

Claim A(2) is that the prosecutor or his agents suppressed and destroyed evidence that Wystrach was cultivating and using marijuana during and subsequent to the trial. (Dkt. 19, p. 5.) In the state court proceedings, Petitioner arguably raised this issue as part of Claim XIX on direct appeal that "the prosecuting attorney's conduct from the investigative stage through the sentencing hearing constituted prosecutorial misconduct in violation of the appellant's constitutional rights" and that "the prosecuting attorney adduced or allowed testimony by Ms. Wystrack about not being involved with alcohol or drugs when he knew or should have known, that she was growing marijuana in her apartment . . . ." (B-1, pp. 68 & 71.) The claim was not addressed by the Idaho Supreme

Court, but that fact does not affect "fair presentation." *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) ("Section 2254(c) requires only that state prisoners give state courts a fair opportunity to act on their claims."); *Castille v. Peoples*, 489 U.S. 346, 351 (1989) (when a claim is presented as a federal claim but ignored and therefore impliedly rejected by the state court, a claim has been "fairly presented"). Petitioner may proceed on this claim.

### Claims A(3)

Claim A(3) is that "the prosecutor and/or his agents suppressed evidence that this same witness (Wystrach) was found to be intoxicated from both alcohol and drugs through the course of the trial and grand jury proceedings involving the petitioner." (Dkt. 19, p. 6.) The Court agrees with Respondent's argument that the claim presented in the federal Petition is not the same claim presented to the state courts.

In his original and amended post-conviction applications Petitioner raised claims that the prosecution had failed to disclose that Wystrach had tested positive for drugs. (E-1, pp. 8 & 124; *see* F-11, pp. 16-17). A June 12, 1991 drug test report submitted as an exhibit to the post-conviction application shows that Wystrach tested positive for morphine on June 7, 1991, a date falling between trial and sentencing.[1] (E-5, Exhibit 29.) The claim that Wystrach failed a drug test between trial and sentencing is not the same as a claim that she was *intoxicated during* trial.

---

[1] The jury trial ended on December 13, 1990, and sentencing was held on April 5, 1991 and June 24, 1991.

Petitioner's motion to amend and proposed second amended application contained the failed-drug-test claim and its potential effect on the jury at trial. (E-2, p. 241.) Judge Gutierrez gave notice in the order conditionally dismissing the post-conviction relief application, that he intended to dispose of the claim that the post-trial drug test should have been disclosed prior to trial, concluding that the outcome of the jury trial would not have been changed because the drug test was post-trial. (E-1, p. 166.)

When reviewing Petitioner's bifurcated response, Judge Kerrick noted that Petitioner had slightly changed his claim to allege that nondisclosure of the failed drug test occurred had an effect at sentencing, not trial. (E-2, p. 330.) Although Judge Kerrick briefly addressed the failed-drug-test claim relative to sentencing, it is *not* the same claim as A(3) here (whether Wystrach was intoxicated during trial).

In his appellate brief on post-conviction review, Petitioner's claim was that the prosecutor allowed Wystrach to provide "perjured testimony about her drug and alcohol usage to the trial judge while under oath." (F-1, p. 17.) The claim that Wystrach was actually intoxicated during trial as she presented her testimony was not raised.

The Idaho Court of Appeals rejected the claim that the June 1991 test could have been used to impeach Wystrach at sentencing, because Wystrach testified only at the April 1991 hearing and was prevented from testifying at the June 1991 hearing by objection from defense counsel.[2] However, the Court of Appeals rejected the claim on the

---

[2] After determining that the claims were not properly presented, the Court of Appeals also addressed a slightly different claim, that the State had withheld evidence that when

merits in the alternative, only after noting that the "revamped [prosecutorial misconduct] arguments" were procedurally improper because they had been brought in the response to the state district court's notice of intent to dismiss. (F-11, pp. 15-17.)

It is abundantly clear that Petitioner did not present Claim A(3) to the state district court or the Idaho Court of Appeals. Petitioner presented a broader claim, more like Claim A(3), in his petition for review before the Idaho Supreme Court. However, it is improper for claims to be presented for the first time to the Idaho Supreme Court when the Idaho Court of Appeals heard and decided the appeal. *Castille v. Peoples*, 489 U.S. 346, 348 (1989); *accord Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994).

Under Idaho law it is clear that the Idaho Supreme Court will not consider claims that were not raised in an initial appeal to the Idaho Court of Appeals. *Centers v. Yehezkely*, 706 P.2d 105 (Idaho Ct. App. 1985). There is nothing in Idaho precedent suggesting a practice or trend of addressing claims presented for the first time in a petition for review before the Idaho Supreme Court. *See, e.g., Wood v. Wood*, 855 P.2d 473 (Idaho Ct. App. 1993); *Cooper v. Board of Professional Discipline of Idaho State Bd. of Medicine*, 4 P.3d 561, 568 (Idaho 2000). Therefore, the Court concludes that Claim A(3) is procedurally defaulted.

---

Wystrach had arrived to take a polygraph examination in October 1989, she appeared to be intoxicated. At trial, Wystrach testified that her most recent intoxication was August 1989. The Court of Appeals determined that the withheld evidence showed her last date of intoxication was two months after the date she testified to at trial and that this difference would not have changed the outcome of the jury trial. (F-11, pp. 16-17.) Again, this is not the same claim as being intoxicated during trial (December 30, 1990 through December 13, 1990).

**Claim A(4)**

Claim A(4) is that the prosecutor and/or his agents "elicited and suborned perjured testimony from Charles Tisdale during Tisdale's direct testimony at trial." (Dkt. 19, p. 6.) Petitioner included this claim as a prosecutorial misconduct claim in the original pro se post-conviction application. (E-1, p. 8.) However, Petitioner's counsel amended the claim out of the first amended post-conviction application and did not include it in the proposed second amended post-conviction application, thus abandoning the prosecutorial misconduct claim, but instead raised the issue as an ineffective assistance of counsel claim. (E-1, pp. 116-18.) Judge Kerrick found the issue framed as a prosecutorial misconduct claim in the bifurcated response and objection to be "new" and "separate and apart from those discussed in Petitioner's Motion to Amend." (E-2, p. 329.) Judge Kerrick then stated in the order of dismissal: "Accordingly, this Court will now address whether Petitioner is entitled to relief from the Conditional Order of Dismissal filed April 29, 1999, in light of the Bifurcated Response." (*Id.*) Judge Kerrick dismissed the claims, reasoning: "Petitioner has failed to address how the alleged misconduct, if true, would have had a bearing on his trial so as [to] have produced a different outcome." (E-2, p. 330.)

On appeal of the post-conviction case, Petitioner raised this claim in his appellate brief. (F-1, p. 17.) The Idaho Court of Appeals found that the claim was not properly raised before the state district court, and that the state district court was not required to address it. (F-11, p. 16.)

However, as noted above, the district court *did* address the claims. Nevertheless, because the claims were not properly raised in the district court, the Court of Appeals determined they were barred. The Idaho Court of Appeals concluded: "Even if these claims had been correctly presented, they would not warrant relief." (*Id*.) The Court of Appeals did not particularly address the Tisdale claim, but elsewhere in its opinion it extensively discussed the Tisdale issue in the context of an ineffective assistance of counsel claim. (F-11, pp. 16-17 & 7-9.)

Respondent argues that an alternative holding on the merits does not prevent a claim that was denied on an independent and adequate state ground from being procedurally defaulted on federal habeas corpus review. *See Loveland v. Hatcher*, 231 F.3d 640, 643-44 (9th Cir. 2000). The application of the rule in this circumstance presents an interesting question. Particularly, in Idaho, where the state district court addresses the merits of a claim that was presented in a procedurally improper manner, may the appellate courts refuse to address the claim on appeal solely because of the improper presentation in the state district court?

This case presents nearly the same set of circumstances that occurred in *Cowger v. State of Idaho*, 978 P.2d 241 (Idaho Ct. App. 1999). There, in response to a notice of intent to dismiss, Cowger's attorney filed a letter that implied Cowger had a new claim. In its final dismissal order, the state district court attempted to address the claim. *Id*. at 246 & 247 n.1. Cowger appealed, but the Idaho Court of Appeals concluded that the only way to raise additional issues in a post-conviction case after a notice of intent to dismiss has

been issued is to file an amended application. *Id.* at 247. Even though the district court had attempted to address the issues, the appellate court noted that the district court"was not required to do so," and the appellate court "conclude[d] that the issues not raised in Cowger's application for post-conviction relief should not be reviewed on appeal."

A state procedural bar is adequate if it is "clear, consistently applied, and well-established at the time of [the] purported default." *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir.1994). In *Powell v. Lambert*, 357 F.3d 871 (9th Cir. 2004), the Court clarified that a state's published and unpublished opinions should be reviewed to determine whether a state procedural rule is "clear, consistently applied, and well-established." *Id.* at 872. Once a respondent demonstrates the existence of a state procedural bar, the burden shifts to the petitioner to demonstrate that the bar is inadequate "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003). If petitioner so demonstrates, the ultimate burden lies with respondent. *Id.* at 586.

The Idaho Supreme Court applied *Cowger* (decided by the Idaho Court of Appeals on April 19, 1999), to Petitioner's counseled bifurcated response to the notice of intent to dismiss, filed on June 11, 1999. *Cowger* presumably became final 21 days after the decision was issued, which would have been about May 10, 1999, just one month prior to the filing of Petitioner's response. *See* Idaho Appellate Rule 38(b).

*Cowger* relied on the Uniform Post-Conviction Procedure Act, Idaho Code §19-4901, *et seq*. The Act provides that a post-conviction application "shall . . . specifically set forth the grounds upon which the application is based." I.C. § 19-4903. Another provision of the Act is that "[i]n considering the application the court shall take account of substance regardless of defects of form," which appears to be a section directed at pro se applications. I.C. § 19-4906(a) (1999 version). The Act also gives the state district court the flexibility to allow amendment of the application. I.C. § 19-4906(b).

Though *Cowger* was new, it relied upon a 1992 Idaho Court of Appeals opinion, *Griffith v. State*, 825 P.2d 94 (Idaho Ct. App. 1992). In *Griffith*, the court determined:

> I.C. § 19-4906(b) permits the district court to dismiss an application for post-conviction relief unless it contains allegations which, if proved, would entitle the defendant to the remedy sought. Implicit in this standard is the requirement that all necessary allegations be made in the application. *See also* I.C. § 19-4903 ("The application shall . . . specifically set forth the grounds upon which the application is based.")

*Id.* at 97.

There is nothing in subsequent case law or in the record to suggest that *Griffith* and *Cowger* were not current and authoritative law at the time Petitioner's counsel filed Petitioner's bifurcated response and motion to amend, even though *Cowger* was only one month old. The issue here is not that *Cowger* was new law; it is that there is nothing suggesting that it was a departure from *Griffith*, or that there was an absence of law or a confusing set of cases governing the issue. In *Martinez v. Klauser,* 266 F.3d 1091, 1093 (9th Cir. 2001), the United States Court of Appeals for the Ninth Circuit explained that

when there is "an absence of prior authority supporting the [state court's] decision" and the decision appears "contrary to [state] law," such a decision does *not* rest on a "clear, consistently applied, and well-established" state procedural rule, and the procedural default may *not* be applied to bar consideration of the merits of a petitioner's claim in a federal habeas corpus action. *Id.* at 1093-94.

Here, Petitioner is faced with the presence of prior law and no contrary decisions. There are no published cases suggesting that the procedural bar set forth in *Cowger* has been modified or overturned. At least one recent unpublished opinion has applied the *Cowger* procedural bar. *See, e.g., McCabe v. State of Idaho*, 2008 Unpub. Op. No. 549 (July 14, 2008) (following *Cowger*).

The Court has also considered that Petitioner had counsel to aid him during this time period, and that counsel did, in fact, file a separate response and a motion to amend and a proposed second amended post-conviction application, and that counsel chose to include the Tisdale issue as an ineffective assistance of counsel claim in both the amended post-conviction application and the second amended post-conviction application rather than as a prosecutorial misconduct claim.

Petitioner argues that he had no fair warning he would need to further amend his application. However, Petitioner already had submitted a application and an amended application. Petitioner also had the benefit of counsel, who obviously understood that an amended application was necessary to bring additional claims, because a second amended

application was submitted with the bifurcated response. The record reflects that appropriate opportunity to amend was afforded.

Petitioner argues that the state court's failure to grant him an evidentiary hearing precludes this Court from determining that the rule barring his claims is an adequate state procedural bar. To the contrary, an evidentiary hearing would have been for the purpose of *further developing* claims he actually brought, while the question of procedural default focuses on whether Petitioner *actually brought* the claims.

Based on all of the foregoing, the Court concludes that Respondent has met the burden of showing that the rule is adequate. As to the procedural bar's independence, the rule is a tool designed to aid the state courts in achieving practical finality of convictions, and it is not intertwined with federal law. Accordingly, Claim A(4) is procedurally defaulted.

**Claim A(7)**

Claim A(7) is that the prosecutor encouraged and failed to correct false evidence at the sentencing phase of the proceedings in an effort to obtain the death penalty. On direct appeal, the title of one of Petitioner's issues presented on appeal was "[w]hether the prosecuting attorney's conduct from the investigative stages through the sentencing hearing constitutes prosecutorial misconduct in violation of the Appellant's constitutional rights." (B-1, p. 15.) However, in the body of the brief there was no mention of the sentencing phase of the proceedings, and no claim that the prosecutor encouraged or ignored false evidence at sentencing *in an effort to obtain the death penalty*. This claim

was not included in the amended post-conviction application. (E-1, p. 102.) It was not raised in briefing before the Idaho Court of Appeals. (State's Lodging F-1.) Accordingly, this claim is procedurally defaulted for failure to properly present it to the Idaho courts.

**Claim B**

Claim B is that Petitioner was denied ineffective assistance of counsel at pre-trial, trial, sentencing, and direct appeal. (Dkt. 19, pp. 7-9.) At issue is whether Petitioner properly presented all of his sub-issues to the Idaho Supreme Court.

Before the Idaho Supreme Court, Petitioner's "Prefatory Statement" to his petition for review stated: "Although review is sought of the entire Court of Appeals unpublished opinion and the appellant's claims therein, here, Jones has chosen to readdress only three (3) issues." (F-15, p. 1.)

Respondent argues that all of the unspecified claims are procedurally defaulted because Petitioner failed to raise them within the four corners of the petition for review. The United States Supreme Court has held that a habeas petitioner's failure to supply the federal basis for a claim in the brief or petition before the highest state appellate court means that the claim was not fairly presented. *Baldwin v. Reese*, 541 U.S. 27 (2004). In *Reese*, the Supreme Court determined that a state court need look only to the brief or petition that has been submitted in support of a request for review, and ordinarily it is not required to search other documents filed in lower courts. *Id*. at 32.

Unlike the present case, however, the petitioner in *Reese* did *not* attempt to incorporate the lower court brief by reference, and although *Reese* may inform the

analysis, it does not seem to speak directly to that situation. Presumably, proper exhaustion under these circumstances depends on whether the highest state court is willing to consider claims through incorporation of the brief considered by a lower appellate court. *See Insyxiengmay v. Morgan*, 403 F.3d 657, 668-69 (9th Cir. 2005) (examining state law in relation to incorporating documents attached to a petition); *see also Lockheart v. Hulik*, 443 F.3d 927, 929 (7th Cir. 2006) (noting that whether incorporation by reference will satisfy the fair presentation requirement turns on what is permissible under state law).

The parties have not adequately addressed whether an Idaho state prisoner can satisfy the fair presentation requirement in this manner. Therefore, the Court will reserve ruling on whether this claim has been fairly presented to the Idaho Supreme Court. Instead, the Court will have the parties brief the *merits* of the ineffective assistance of counsel claims. If it appears that Petitioner would be entitled to habeas corpus relief on any of these claims based on the ineffective assistance of counsel, then the Court will permit Respondent to re-assert dismissal of the claims on procedural grounds after the Court's ruling on the merits. In that event, the Court will request additional briefing focused on Idaho Supreme Court procedure from both parties. At this time, Petitioner may proceed on those Claims B(1) through (6) set forth in his Amended Petition. (Dkt. 19.)

**Claim C**

Claim C is a due process challenge based upon "improper settlement" of the state court record during post-conviction appeal. Petitioner brought to the attention of the Idaho Court of Appeals issues regarding the state court record, but not as a separate federal claim. In his briefing before the Idaho Court of Appeals, he stated that once he had resolved the issue, he would "seek permission to add this issue to his briefing, and argue that the lack of these exhibits places him at distinct disadvantage in presenting his other issues on appeal." (F-1, pp. 20-21.) Nowhere in the brief did Petitioner present this issue as a Due Process Clause claim.

Petitioner did not supplement his Court of Appeals briefing, but instead, in his petition for review before the Idaho Supreme Court, he asserted that he was denied due process because the Court of Appeals' opinion was issued three months after briefing was completed. (F-15, pp. 7-8.)  In Idaho, claims cannot be raised for the first time in a petition for review before the Idaho Supreme Court. Petitioner argues that he brought this issue to the attention of the state courts in many different ways; however, his argument was that "the missing portions of the record are presumed to support the trial court's rulings," not that the lack of a record worked a Due Process Clause violation. (F-2, internal exhibit no. F-1.)

Assuming, arguendo, that this is a legitimate habeas corpus claim, the Court agrees that it is procedurally defaulted for failing to present it as a due process claim to the Idaho

Court of Appeals before presenting it to the Idaho Supreme Court. This is a strained

argument, however, because the claim is noncognizable.

Federal habeas corpus review "is limited to deciding whether a conviction violated

the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62,

67-68 (1991). Although failures regarding the state court on direct appeal can be brought,

for example, as ineffective assistance of appellate counsel claims,[3] there is no

constitutional right to counsel on post-conviction and, moreover, no constitutional right to

a post-conviction review process at all. Lack of a full record on post-conviction review is

not a challenge to a state conviction or sentence, but a challenge to the collateral review

process of the state.

This Court agrees with the reasoning of other district courts holding that such a

claim is not cognizable. In *McClellan v. Wilson*, 2007 WL 666632 (E.D. Pa. 2007) the

petitioner argued that he "was clearly denied appellate review of the complete record in

Superior Court," which "abused its discretion when [an] incomplete record was used to

affirm the Lower Court's decision." *Id.* at *7. The federal district court reasoned: the

"federal role in reviewing an application for habeas corpus is limited to evaluating what

occurred in the state or federal proceedings that actually led to the petitioner's conviction;

what occurred in the petitioner's collateral proceeding does not enter into the habeas

---

[3] *See, e.g.,Moore v. Carlton*, 74 F.3d 689, 690 (6th Cir. 1996) (the remedy for a claim
that appellate counsel was ineffective for failing to file a complete record on direct appeal is a
conditional granting of relief unless the State grants him a delayed appeal).

calculation." *Id. See also Caballero v. Folino*, 2008 WL 650024 (E.D. Pa. 2008) (petitioner's claim that the state court denied his due process rights on post-conviction review when it provided him with incomplete transcripts is not cognizable on habeas review).

**Claim D**

Claim D is that Petitioner was denied due process based upon a violation of the marital privilege under Idaho Rule of Evidence 504, arising from non-verbal "meaningful glances" between Petitioner and his former wife, Sherry Wystrach. Petitioner raised this issue on direct appeal, but only in the context of a violation of state rules, rather than as a federal claim. The Court agrees that Petitioner presented this only in the context of "Idaho's marital privilege." (B-1, p.54.) Due process is not mentioned in the brief. (*Id.*, pp. 54-57.)

Here, Petitioner argues that "[t]he federal implications are set out on page 12 of the defendant's brief on petition for rehearing." (Dkt. 4, pp. 7-8.) To the contrary, Petitioner argued on page 12 of his state court brief that the "Court's admission of Wystrach's testimony of the 'meaningful glance' in the presence of her parents breaks new ground in Idaho law, contradicts accepted practice in those states having similar marital privilege statutes, and ignores the presumption of privilege." The mere similarity between a state law claim and a federal claim does not constitute fair presentation of the federal claim. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). General references in state court to broad constitutional principles, such as due process, equal protection, and the right to a

fair trial, are likewise insufficient. *See Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999). In this case, Petitioner did not use the words "due process" or refer to the Constitution in his briefing.

Petitioner also argues that this claim was presented in his motion for new trial. However, on appeal, Petitioner again presented no constitutional issue, but instead presented the question of whether the factual issues presented met the state law standards governing the granting of a new trial. (D-1 & D-7.)

For all of the foregoing reasons, the Court concludes that Claim D is procedurally defaulted.

**Claims E(1), (2), (3), (4), & (7)**

Claim E alleges that Petitioner was denied due process at his sentencing hearing. Respondent argues that Claims (E(1),(2), (3), & (4)) (based on Petitioner's polygraph results not being admitted into evidence) and Claim E(7) (based upon the Idaho Department of Correction failing to receive a corrected version of Petitioner's Pre-Sentence Investigation Report (PSI)) are procedurally defaulted.

In his brief on direct appeal, Petitioner argued that he was not afforded a fair sentencing hearing, but he did not raise either the polygraph or the PSI issue, but instead relied on other grounds. (State's Lodging B-1, pp. 65-68.) Because the polygraph or PSI claims were not properly presented to all levels of the Idaho courts, these subclaims are procedurally defaulted.

### 4.  Cause and Prejudice and Miscarriage of Justice Exceptions

A procedurally defaulted claim will not be heard in federal court unless the petitioner shows either that there was legitimate cause for the default and that prejudice resulted from the default, or, alternatively, that the petitioner is actually innocent and a miscarriage of justice would occur if the federal claim is not heard. *Id.*

Petitioner has chosen not to make a cause and prejudice or miscarriage of justice argument. In its review of the record, the Court saw no set of facts that would support a cause and prejudice argument. Petitioner had access to counsel throughout most of his proceedings, and, though there was a large gap of inactivity in his post-conviction matter, that did not cause the default of Petitioner's claims. Rather, the claims presented appear to have been chosen as a matter of attorney strategy. Accordingly, the Court finds no reason to excuse the default of the claims set forth above.

### 5.     Respondent's Arguments that Claims Are Vague and Conclusory

The Court declines to dismiss any claims based on Respondent's argument that the Amended Petition is too vague to state a claim. Pro se petitioners often have difficulty articulating their claims, and the Court will liberally construe Plaintiff's claims in the same manner as presented to, and as understood and addressed by, the state district court and the state appellate courts. However, some of these claims cannot be heard due to procedural default, as set forth above.

# ORDER

**IT IS ORDERED:**

1.     Respondent's Motion for Partial Summary Dismissal (Dkt. 11) is GRANTED in part and DENIED in part, as specified above. Petitioner may not proceed on Claim A(3) (Wystrach was intoxicated during trial), A(4) (Tisdale issue as prosecutorial misconduct), A(7) (prosecutor failed to correct false evidence at sentencing to obtain death penalty), Claim C (improper settlement of record on post-conviction appeal); Claim D (marital privilege), Claim E(1), (2), (3) and (4) (Petitioner's polygraph results), and Claim E(7) (PSI report), because they are procedurally defaulted; in addition, Claim C is not cognizable on habeas corpus review.

2.     Respondent shall file an Answer no later than **December 30, 2010**. Respondent shall file a Motion for Summary Judgment on the remaining claims no later than **February 26, 2011.** Responses shall be due no later than **March 31, 2011.** Replies, if any, shall be due no later than **April 15, 2011.**

DATED: September 30, 2010

_____
Honorable Mikel H. Williams
United States Magistrate Judge