UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT RICHARD JONES,<br><br>       Petitioner,<br><br>  v.<br><br>PHILLIP VALDEZ, Warden, Idaho<br>Correctional Institution; and IDAHO<br>ATTORNEY GENERAL,<br><br>      Respondents. | Case No. 1:09-cv-00132-MHW<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

Pending before the Court in this habeas corpus action is Respondent Philip

Valdez's Motion for Summary Judgment. (Dkt. 11.) The Motion is now fully briefed. The

parties have consented to the jurisdiction of a United States Magistrate Judge to enter

final orders in this case. (Dkt. 7 & 13.) *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

Having fully reviewed the record, including the state court record, the Court finds

that the parties have adequately presented the facts and legal arguments in the briefs and

record and that the decisional process would not be significantly aided by oral argument.

Therefore, in the interest of avoiding delay, the Court will decide this matter on the

written motions, briefs, and record without oral argument. D. Idaho L. Civ. R. 7.1(d).

Accordingly, the Court enters the following Order granting Respondents' Motion for Summary Judgment.

## BACKGROUND

Troy Vance (Vance) was murdered in his home in Canyon County, Idaho, in 1979. In 1980, the State brought charges against Petitioner Robert Jones (Petitioner) and Jose Alfonso Martinez (Martinez). In 1982, the charges were dismissed. (State's Lodging F-11, p. 1.)

In 1989, Petitioner's former wife, Sherry Wystrach (Wystrach) came forward with new evidence. As a result, a grand jury issued an indictment against Jones, Martinez, Donna Cordell (Cordell), and Rebecca Spalding (Spalding) for the Vance murder.

Third Judicial District Judge Jim A. Doolittle presided over Petitioner's trial, and Canyon County Prosecutor Richard Harris prosecuted the case on behalf of the state of Idaho. At the trial, the testimony of Wystrach "was integral to the prosecution's case, providing first-hand knowledge of the conspiracy, its subject matter and payoffs." (State's Lodging F-11, p. 1.) In fact, Wystrach's "testimony was particularly important because there was no forensic evidence linking [Petitioner] to the crime." (*Id.*) At trial, defense counsel impeached Wystrach by introducing evidence, "both extrinsically and via cross-examination, of Wystrach's prior alcohol and drug abuse, her failed relationships, her vindictiveness, her propensity to lie and become confused or forgetful, and the immunity from prosecution that was granted her by the State." (*Id.*, p. 2.)

The prosecution also relied on convicted felon Charles Tisdale (Tisdale) to corroborate Wystrach's testimony. Tisdale testified at trial that, when he and Petitioner were inmate legal assistants, Petitioner confessed that he was involved in Vance's murder. (State's Lodging A-6, pp. 764-70.) At the time of the trial, Tisdale was on parole from the state of Idaho, but he was living in Utah. He was facing new federal criminal charges, as well as an Idaho parole violation stemming from the federal charges. Petitioner's counsel sought to impeach Tisdale by showing that he had received favorable treatment from the government in exchange for his agreement to testify for the prosecution at Petitioner's trial.

A jury found Petitioner guilty of first degree murder. The State sought the death penalty. After a two-part sentencing hearing between April and June of 1991, the judge sentenced Petitioner to a fixed life term of imprisonment. Judgment was entered on June 24, 1991.

Counsel filed a motion for a new trial for Petitioner, which was denied by the state district court. No appeal was taken. (State's Lodging A-2, pp. 587-92 & 601-04.)

Also through counsel, Petitioner pursued a direct appeal challenging his conviction and sentence, where he did not obtain relief. (State's Lodgings B-1 through B-12.) While his appeal was pending, Petitioner's counsel filed a second motion for a new trial. (State's Lodging C-1, pp. 21-31.) It was denied, and an appeal was taken. (State's Lodging D-1.) The denial of the motion was affirmed on appeal. (State's Lodging D-7.)

Petitioner later filed a state pro se post-conviction relief application. He was appointed counsel, and his counsel filed an amended post-conviction application on Petitioner's behalf. The State filed a motion to dismiss. Third Judicial District Judge Sergio A. Gutierrez[1] issued an order conditionally dismissing the post-conviction relief application on April 29, 1999. In response, Petitioner's counsel filed a "bifurcated response and objection to the State's motion to dismiss and the court's notice of intent to dismiss summarily" on June 11, 1999. Petitioner's counsel simultaneously filed a motion to amend and a second amended application. (State's Lodgings E-1 & E-2.)

District Judge Gutierrez denied the motion to amend on May 29, 2001. (State's Lodging E-2, pp. 272-81.) However, no action was taken on Petitioner's bifurcated response and objection for over three years, and the case was closed for inactivity. On December 30, 2004, Petitioner filed a motion to re-open the case, which was granted. Third Judicial District Judge Juneal C. Kerrick then issued a decision dismissing the case. (State's Lodging E-2, pp. 326-33.) The dismissal and denial were affirmed on appeal by the Idaho Court of Appeals. Petitioner's petition for review with the Idaho Supreme Court was denied. (State's Lodgings F-1 through F-18.)

Petitioner subsequently filed this federal habeas corpus action, and Respondent filed a Motion for Partial Summary Dismissal. As a result, the following claims were dismissed: Claim A(3) (Wystrach was intoxicated during trial), A(4) (prosecutorial

---

[1] Judge Gutierrez was later appointed to the Idaho Court of Appeals, but had no role in determining Petitioner's appellate cases.

**MEMORANDUM DECISION AND ORDER - 4**

misconduct as relating to Tisdale), A(7) (prosecutor failed to correct false evidence at sentencing to obtain death penalty), Claim C (improper settlement of record on post-conviction appeal); Claim D (marital privilege), Claim E(1), (2), (3) and (4) (Petitioner's polygraph results), and Claim E(7) (PSI report).

Respondent then filed a Motion for Summary Judgment on the remaining claims. (Dkt. 45.) Petitioner has filed a Response and Objections, with exhibits. (Dkt. 54.) The Court notes that, on July 7, 2011, the Clerk of Court mistakenly filed documents pertaining to a different litigant and a different case (Docket Nos. 54-8 through 54-28) in this case, and those items will be stricken from the record. To clarify, Docket Nos. 54, and 54-1 through 54-7 belong in this case and have been considered, and Docket Nos. 54-8 through 54-28 belong to a different case, have not been considered, and have been sealed, because they cannot be "removed" from the electronic docket. The Court also takes notice that Attorney James D. Huegli has filed a notice of appearance of co-counsel for Petitioner, appearing together with Petitioner. (Dkt. 55.)

## RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

### 1.      Standard of Law Governing Summary Judgment

Federal habeas corpus relief may be granted on claims adjudicated on the merits in a state court judgment only when the federal court determines that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under § 2254(d), as amended by the Anti-terrorism and Effective

Death Penalty Act (AEDPA), federal habeas corpus relief is further limited to instances where the state-court adjudication of the merits:[2]

1.   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

When a party contests the state court's legal conclusions, including application of the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests: the "contrary to" test and the "unreasonable application" test. Under the first test, for a decision to be "contrary to" clearly established federal law, the petitioner must show that the state court applied "a rule of law different from the governing law set forth in United States Supreme Court precedent, or that the state court confronted a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrived at a result different from the Court's precedent." *Williams v. Taylor*, 529 U.S. 362, 404-06 (2000).

Under the second test, to satisfy the "unreasonable application" clause of § 2254(d)(1), the petitioner must show that the state court was "unreasonable in applying the governing legal principle to the facts of the case." *Williams*, 529 U.S. at 413. A federal court cannot grant relief simply because it concludes in its

---

[2]A state court need not "give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011).

independent judgment that the decision is incorrect or wrong; the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell v. Cone*, 535 U.S. 685, 694 (2002).

In *Harrington v. Richter*, 131 S.Ct. 770 (2011), the United States Supreme Court reiterated that a federal court may not simply re-determine a claim on its merits after the highest state court has done so, just because the federal court would have made a different decision. Rather, the review is necessarily deferential. The Supreme Court explained that under § 2254(d), a habeas court (1) "must determine what arguments or theories supported or . . . could have supported, the state court's decision;" and (2) "then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id*. at 786. If fairminded jurists could disagree on the correctness of the state court's decision, then a federal court cannot grant relief under § 2254(d)(1). *Id*. The Supreme Court emphasized: "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (internal citation omitted).

When a party contests the state court's factual determinations, the court must undertake a § 2254(d)(2) analysis. To be eligible for relief under § 2254(d)(2), the petitioner must show that the state court decision was based upon factual determinations that were "unreasonable in light of the evidence presented

in the State court proceeding." *Id*. The United States Supreme Court has admonished that a "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010) (citations omitted).

The United States Supreme Court has yet to decide "whether, in order to satisfy § 2254(d)(2), a petitioner must establish only that the state-court factual determination on which the decision was based was 'unreasonable,' or whether § 2254(e)(1) additionally requires a petitioner to rebut a presumption that the determination was correct with clear and convincing evidence." *Wood v. Allen*, 130 S.Ct. 841, 848 (2010). Rather, that Court first applies the "unreasonable" test of § 2254(d)(2), and, if it does not conclude that the state court decision is an unreasonable determination of the facts based on the state court record, it does not reach the question of whether the higher standard of § 22254(e)(1) applies. *See Wood*, 1130 S.Ct. at 849. The United States Court of Appeals for the Ninth Circuit Court, on the other hand, has resolved the conflict presented by these two sections–it applies only § 2254(d)(2) if the review is based upon the same factual record that was before the state courts ("intrinsic review"), while it applies § 2254(e)(1) to factual challenges that involve evidence presented for the first time in federal court ("extrinsic evidence"). Here, the parties do not seek to introduce new evidence in federal court, but are relying on the state court record.

If the federal court concludes that a state court adjudication was based on an unreasonable determination of fact, then the federal court must "consider the petitioner's related claim de novo" to determine whether the petitioner has shown that relief under § 2254(a) is warranted. *Maxwell v. Roe*, 628 F.3d 486, 494-95 (9th Cir. 2010). *See also Jones v. Walker*, 540 F.3d 1277 (11th Cir. 2008) (*en banc*).[3]

## 2. Discussion of Petitioner's Request for an Evidentiary Hearing

Petitioner asserts that he is entitled to an evidentiary hearing in this action on the merits of his claims. The United States Supreme Court has recently clarified the law regarding when habeas corpus petitioners can bring additional evidence into federal court. Particularly, in *Cullen v. Pinholster*, 131 S.Ct. 1388, 1400 (2011), the Court explained: "If a claim has been adjudicated *on the merits* by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) *on the record that was before that state court*." *Id*. at 1400 (footnote

---

[3] The *Jones* Court reasoned:

[W]hen a state court's adjudication of a habeas claim results in a decision that is based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, this Court is not bound to defer to unreasonably-found facts or to the legal conclusions that flow from them.... Because the Georgia Supreme Court unreasonably determined the facts relevant to Jones' Sixth Amendment claim, we do not owe the state court's findings deference under AEDPA. We therefore apply the pre-AEDPA de novo standard of review to Jones' habeas claims. "

540 F.3d at 1288 n.5 (quotations, citations, and alterations omitted).

omitted, emphasis added.); *see also Holland v. Jackson*, 542 U.S. 649, 652 (2004) ("[W]e have made clear that whether a state courts decision was unreasonable must be assessed in light of the record the court had before it.") (citations omitted). Therefore, Petitioner's request is denied because it is without a proper basis in the law.

### 3.    Discussion of Merits of Claims

#### A.    *Abandoned Claims*

In his Response to the Motion for Summary Judgment, Petitioner abandons two of his claims: A(1), that his due process rights were violated by the prosecution when it presented inadmissible evidence to the grand jury, and B(3), that counsel was ineffective for failing to employ a forensic expert to examine the murder weapon. (Dkt. 54, p. 2.) Petitioner clarifies that he still wishes to argue that the prosecution's cumulative misconduct regarding the grand jury (the subject of Claim A(1)) should be considered as support for Claim A(5) and A(6), but not as a separate claim. Petitioner also states that he "sets aside further argument" on Claims B(2) and B(4). (*Id.*) It is not clear that Petitioner has abandoned Claims B(2) and B(4), and, thus, the Court will address them based on the briefing and record before the Court.

#### B.    *Claim A(2)*

In claim A(2), Jones contends he was denied due process in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), based upon the state suppressing and

destroying evidence that Wystrach "was cultivating and using marijuana during and subsequent to the trial." (Dkt. 19, p.5.)

It is well established that the prosecution has a duty under the due process clause of the Fourteenth Amendment to disclose exculpatory evidence to the defense that is material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83 (1963); *United States v. Bagley*, 473 U.S. 667, 676 (1985). A meritorious *Brady* claim contains three essential components: (1) the evidence must be favorable to the accused, either because it is exculpatory or impeaching; (2) the prosecution must have withheld the evidence, either intentionally or inadvertently; and (3) the evidence must be material to guilt or punishment. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Suppressed evidence is material under *Brady*, and its non-disclosure is prejudicial, when there is a reasonable probability that had the evidence been disclosed, the result of the proceeding would have been different. *Bagley*, 473 U.S. at 682; *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995). In determining "materiality," the court must assess the weight and force of the withheld evidence collectively, rather than item by item. *Kyles*, 514 U.S. at 433-34.

The Court first addresses Petitioner's contention that, although he is not entitled to relief on his claim based on prosecutorial misconduct during grand jury proceedings, he can still "cumulate" that conduct with other alleged prosecutorial misconduct to prove another claim: that the prosecutor did not disclose evidence

about Wystrach's potential current drug use. Petitioner misunderstands the law, which is that, in assessing materiality, the court must assess the weight and force of the withheld evidence collectively, rather than item by item. *Kyles*, 514 U.S. at 436-37. The prosecutor's alleged misdeeds before the grand jury are not a factor in the withheld evidence at issue in Claim A(2); rather, the Court is to assess only the evidence withheld that pertained to Wystrach's cultivation and use of marijuana during and subsequent to the trial.

At the Motion to Dismiss stage of this case, this Court concluded that Petitioner arguably raised this issue as part of Claim XIX on direct appeal. (State's Lodging B-1, pp. 68 & 71.) The Idaho Supreme Court rejected all claims in Petitioner's entire appeal, but did not address the claim in particular. It is important to note that, the second time Petitioner attempted to present this issue on appeal (during post-conviction review), the Idaho Court of Appeals determined that he had not properly presented it to state district court. (State's Lodging F-11, p. 16.) That court went on to determine that, "[e]ven if these claims had been properly presented, they would not warrant relief." (*Id*.) Therefore, what the Court can consider is the evidence was placed before the Idaho Supreme Court on direct appeal, not the additional evidence gathered by Petitioner on post-conviction review. Accordingly, the Court will first address the claim as it was presented on direct appeal, and then as it was presented on post-conviction appeal.

A time line of events is helpful to understanding Petitioner's claim that the

prosecutor violated *Brady* by failing to disclose evidence of Wystrach's drug use:

December 5, 1990    At Petitioner's trial, Sherry Wystrach testified that she began having an affair with Petitioner when she was 13 and he was about 30 years old. (State's Lodging A-5, p. 521-22.) At the time, she and her older sister were involved in selling marijuana with Petitioner. (*Id.*, pp. 520-21) After living with Petitioner for several years, Wystrach married Petitioner when she was 16. (*Id.*, pp. 522-23.) Wystrach testified that Petitioner was employed by a company until a few months after their marriage, and, when he was fired, he never worked at a job receiving a salary or wage again. (*Id.*, p. 524) Wystrach testified that Petitioner became involved with his co-defendant, Jose Alfonso Martinez, in a business buying and selling drugs. (*Id.*, p. 525) Wystrach testified that she, Petitioner, and a woman involved in the drug business named Donna, met and discussed that Troy (the murder victim) was physically abusing Donna's sister, that Troy should be done away with, and that there was a lot of money to be made by that being done.(*Id.*, pp. 537-389.)

Wystrach further testified that Donna was to give Petitioner half of the money up front and half after the job was done, and that Donna, in fact, handed Wystrach the first instalment of the beginning payment of $2,000 in cash in an envelope, which she handed to Petitioner. (*Id.*, pp. 541-43.) Other similar payments followed before the murder. (*Id.*, pp. 544-45.) Wystrach testified that she and Petitioner drove out to Troy Vance's house, where Petitioner stopped, got out, and used binoculars to look through the windows of Vance's home. (*Id.*, pp. 546-47.) She further testified that Martinez and Petitioner cleaned guns, went out at dusk, made other preparations for several days before the murder, and also prepared the guns on the night of the murder. (*Id.*, pp. 550-52.) She also testified that the final payment was eventually made. (*Id.*, p. 564.)

April 5, 1991:    Wystrach testified at the sentencing hearing. (State's Lodging A-12, pp. 188-220.) She testified that in 1989 when she was

living with Petitioner, he was involved in a methamphetamine business. She testified that she and Petitioner used drugs together, and that she had tried to be more careful with drugs after that, because she knew she had a propensity for getting into trouble with drugs. (*Id.*, pp. 190-94.) She also testified that Petitioner worked transporting stolen guns for sale. (*Id.*, pp. 200-01.) She testified that Petitioner had helped Martinez murder someone in Las Vegas before the Troy Vance murder. (*Id.*, pp. 202-03.)

At the end of her testimony, Wystrach volunteered the following:

Wystrach: Your Honor, may I also state something for the record?

The Court: Yes.

Wystrach: I am no longer under any influence of any drugs or alcohol. I will be completely clean from alcohol as of July 1st for one year. Prior to any prescription drugs for almost two years now [sic]. So I am no longer under the influence of any substances. I just wanted that known for the record. And I'm willing to subject to tests.

(*Id.*, pp. 215-16.) Afterward, the judge continues the remainder of the sentencing hearing to June 24, 1991.

April 27, 1991 Canyon County Prosecutor's Investigator Dick Appleton went to Oregon to interview witnesses. On this date, Wystrach showed Appleton a room in their home where she said her boyfriend, Norm O'Driscoll, was cultivating four large marijuana plants. Appleton took Wystrach out to dinner and then returned to her home and pulled up the plants, later destroying them before his return flight to Idaho. (Dkt. 54-5, pp. 6-7.)

June 7, 1991 Prosecutor Richard Harris discloses to Petitioner's counsel that Appleton had found marijuana growing in Wystrach's home and destroyed the plants. Harris also disclosed that,

prior to this episode, he had notified Wystrach that aid with her rent was to be terminated. He further disclosed that Wystrach and O'Driscoll were no longer together. (Dkt. 54-5, pp. 1-2.)

June 14, 1991    Defense made a motion to vacate the sentencing hearing based on information about the marijuana plants. (State's Lodging A-12, p. 221.)

June 18, 1991    At the hearing on the motion to vacate the sentencing hearing, Petitioner argued that Wystrach was the only witness presented by the State at the aggravation hearing to request the death sentence, and they would like additional time to conduct discovery about the disclosures made by the State regarding the marijuana plants. The prosecution argued that the information had been disclosed, that it was not relevant to the testimony of Wystrach at trial, and that it was irrelevant to sentencing.

The sentencing court agreed with the prosecution:

The Court:    What – what I think we are really talking about here is, what if any possible illegal activities of Sherry Wystrach in another jurisdiction in growing, or possessing, or being around in any way marijuana. How is that relevant to the remaining issues in this case, State versus Robert Jones?

As far as I'm concerned, it's totally irrelevant.

The issues remaining for – in the case of State Mr. – versus Mr. Jones are what factors can be adduce that bear upon mitigation of punishment. What does he have to offer as mitigating factors. That's the only thing left in this case as far as I'm concerned.

And Sherry Wystrach is not on trial, and I'm not going to delay his sentence so that you can

> purport to put her on trial cause it's – it's totally irrelevant.
>
> As a matter of fact, I can tell you right now that what little testimony that she gave at the so-called sentencing hearing wouldn't make a pinch of salt as far as difference to me because what I look for in the question of whether the – the aggravating factors are is the evidence I heard at trial.
>
> Her casual opinions, or offhand views are not significant to me at all.

> (A-12, pp. 226-27.)

June 24, 1991     Petition for writ of prohibition and ex parte application for stay of sentencing is denied by Idaho Supreme Court.

The first *Brady* factor is whether the evidence is favorable to the accused, either because it is exculpatory or impeaching, and, here, certainly the evidence is favorable because it is impeaching. The second factor is whether the prosecution withheld the evidence, either intentionally or inadvertently. Nothing in the record before the Idaho Supreme Court on direct review suggests that the prosecution withheld the evidence. In fact, the prosecution disclosed the evidence within a few months of discovering it. The prosecution did not have the evidence in hand when Wystrach testified at trial and at the first half of the sentencing hearing.

Nor was the evidence material, given that (1) Wystrach's testimony was itself only marginally relevant to sentencing, (2) Wystrach was not to be recalled for the second sentencing hearing, and (3) the Court found her testimony

insignificant. Accordingly, based on the record before the Idaho Supreme Court on direct appeal, the claim fails under § 2254(d)(1): it is abundantly clear that the impeachment evidence was disclosed and that Wystrach's sentencing testimony was of little value. Because the Idaho Supreme Court's decision was not contrary to, or an unreasonable application of, *Brady* and its progeny, habeas corpus relief is unwarranted.

The Idaho Supreme Court did not have before it the Norm O'Driscoll Affidavit, which avers that (1) Wystrach had continuous problems with drugs and alcohol, and (2) police officers knew in October 1989 that she had taken some of his prescription pain medication and appeared intoxicated at a polygraph examination. As noted above, this "expanded version" of the *Brady* claim was rejected on procedural grounds by the Idaho Court of Appeals on post-conviction appellate review. However, even with the O'Driscoll Affidavit, the claim does not warrant habeas corpus relief, as the Court will now explain.

After noting that "[e]ven if these claims had been correctly presented, they would not warrant relief," the Idaho Court of Appeals explained:

> While this information that Wystrach was under the influence of drugs when she appeared for a polygraph examination was inconsistent with the trial testimony, it does not meet the *Brady* standard for materiality because there is no reasonable probability that it would have altered the result of Jones' trial. It moves the date of Wystrach's most recent intoxication from her claimed date of August 1989 to a date two months later, October 1989, which was still more than a year prior to Jones' trial. Any impeachment value would have been negligible.

(State's Lodging F-11, at 17.)

The Court of Appeals's reasoning makes abundant sense. It is quite clear from Wystrach's own testimony that she had a longstanding substance abuse problem. (Dkts. A-5, A-12.) It is a matter of common knowledge that addicts often relapse, going back and forth between substance abuse and sobriety. Having the added information about Wystrach's abuse would not have made a difference to the jury, who, on the record before it, already had to weigh her substance abuse history and her personal problems against her testimony on the criminal charges against Petitioner.

The lack of materiality is clear, and Petitioner's claim fails under *Brady*, whether one looks at the dismissal of this claim on direct appeal or at the Idaho Court of Appeals's alternative decision on post-conviction review with the additional information from O'Driscoll. Therefore, federal habeas corpus relief is unwarranted.

### C. *Claim A(5) & A(6)*

Claims A(5) and A(6) are based upon three statements in the prosecutor's closing arguments regarding Charles Tisdale. Jones contends he was denied due process because the prosecutor (1) elicited false testimony from Tisdale on direct examination; (2) relied on the Tisdale testimony in closing argument to corroborate Wystrach's testimony; and (3) lied to defense counsel regarding rewards for Tisdale's testimony. (Dkt. 19, pp. 6-7.)

Defendants argue that Claims A(5) and A(6) are subject to dismissal because they are procedurally defaulted. The Court agrees. On post-conviction review, Petitioner's counsel submitted both a first amended post-conviction application (State's Lodging E-1, pp. 102-26), and a second amended post-conviction application (State's Lodging E-2, pp. 218-42.) Any claims similar to Claims A(5) and A(6) were presented only as ineffective assistance of counsel claims. Therefore, under the reasoning set forth in the Court's earlier Memorandum Decision and Order on Respondent's Motion for Summary Dismissal (Dkt. 38), the Court concludes that Claims A(5) and A(6) are procedurally defaulted. Also, as that Order explains, "cause" for the default is not present, because Petitioner's counsel twice strategically decided which claims to present, and a prosecutorial misconduct claim regarding Tisdale was not among those. Therefore, Claims A(5) and A(6) are subject to dismissal with prejudice.

### D.    *Claim B(1)*

Claim B(1) is that trial counsel failed to properly investigate Charles Tisdale which allowed the "elicitation and subornment of Tisdale's perjured testimony to remain hidden from the jury." (Dkt. 19, pp.7-8.) This claims centers on whether Tisdale received consideration from the government for testifying against Petitioner.

The clearly-established law governing a claim of ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984). There, the United States Supreme Court determined that, to succeed on an ineffective assistance claim, a petitioner must show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness, and (2) the petitioner was prejudiced by the deficient performance. *Id*. at 684.

In assessing whether trial counsel's representation fell below an objective standard of competence under *Strickland*'s first prong, a reviewing court must view counsel's conduct at the time that the challenged act or omission occurred, making an effort to eliminate the distorting lens of hindsight. *Id*. at 689. The court must indulge in the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id*.

The *Strickland* Court outlined how to use the factors of deficient performance and prejudice to assess a claim that counsel failed to investigate a defendant's case:

> These standards require no special amplification in order to define counsel's duty to investigate, the duty at issue in this case. As the Court of Appeals concluded, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for

reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

466 U.S. at 690-91.

Prejudice under these circumstances means that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 684, 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id*. at 694.

A petitioner must establish both incompetence and prejudice to prove an ineffective assistance of counsel claim. 466 U.S. at 697. On habeas review, the court may consider either prong of the *Strickland* test first, or it may address both prongs, even if one is deficient and will compel denial. *Id.*

The foregoing standard, giving deference to counsel's decisionmaking, is the de novo standard of review. Another layer of deference–to the state court decision–is afforded on federal habeas corpus review. In giving guidance to district courts reviewing *Strickland* claims on habeas corpus review, the United States Supreme Court explained:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams*, *supra*, at

410, 120 S.Ct. 1495. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Richter*, 131 S.Ct. at 785.

The facts before the Idaho Court of Appeals were these. In 1989, convicted felon Charles Tisdale was on parole from Idaho, but had permission from the Idaho Commission of Pardons and Parole to live in Utah. Sometime prior to July 15, 1989, Tisdale was charged with several new federal crimes, including illegal transfer of firearms. On July 15, 1989, Tisdale was charged with an Idaho parole violation, illegally possessing a firearm, and he was imprisoned in Utah. (Dkt. 54-6, p. 7.) Tisdale was incarcerated for 220 days while awaiting disposition of the federal and state charges. (*Id.*, p. 4.)

As a result of discussions with federal agents about other criminal incidents for which Tisdale had information, Tisdale revealed that he knew Petitioner and Petitioner's co-defendant, Alfonso "Al" Martinez. At some point in time, it appears that the Canyon County prosecutor and the United States Attorney General discussed having Tisdale testify for the prosecution in Petitioner's case. In May or June of 1990, Tisdale told authorities that he wanted to see two things done if he were to testify: (1) he wanted the Idaho parole hold dismissed, and (2) he wanted to be released rather than imprisoned on the federal charges. (State's Lodging A-6 773-76.)

As of early October 1990, there was a plea bargain offer on the table from the United States to Tisdale in the Utah criminal case, which was contingent upon Petitioner being released from the state of Idaho and testifying for the prosecution at the Jones trial. Petitioner knows this to be the case because of a lengthy report from Tisdale's October 17, 1990, parole violation hearing, *which was not discovered by Petitioner's counsel and not presented at the December 1990 trial.*

The parole hearing report states:

> Gaspar [the parole officer] interjected that he spoke with Heather Cooke, Assistant United States Attorney General, on October 2, 1990, and she confirmed that a plea bargain offer had be made [sic] to Charles.

> Charles said that this plea bargain would require him to cooperate with the Canyon County Prosecuting Attorney's Office as a witness on another criminal case. If he accepted this plea bargain, the pending federal charge (with the exception of the Illegal Transfer of Firearms charge) would be dismissed. Charles said that if he cooperates in this plea bargain, the U.S. Attorney General's Office would be recommend [sic] that he receive probation, and no incarceration. Charles said it is difficult for him to realistically consider this plea bargain because of his incarceration for the parole violation.

(Dkt. 54-6, p. 8.)

As noted, Tisdale could not accept the plea bargain without the cooperation of Idaho. (*Id.*) At that time (in 1990), Idaho refused to cooperate with the Canyon County prosecutor to allow leniency in return for testimony, as later described in Executive Director Olivia Craven's November 13, 1998 Affidavit:

[T]he Canyon County Prosecuting Attorney requested that the Idaho State Parole Commission drop the parole hold and parole violation charges regarding Charles Tisdale so that Charles Tisdale would testify at the trial of Robert Richard Jones.

Your Affiant then stated to the Canyon County Prosecuting Attorney, 'How do you know that Tisdale is telling the truth. He has done this before.' The Canyon County Prosecuting Attorney then stated to your Affiant, 'It doesn't matter, you must help us on this one.' Your Affiant informed the Canyon County Prosecuting Attorney that such an arrangement was not acceptable to your Affiant and then the Canyon County Prosecuting Attorney left the office angry.

(State's Lodging E-2, pp. 244-458.)

On October 17, 1990, two months before Petitioner's trial, the Idaho Commission of Pardons and Parole traveled to Utah and held a hearing. The Commission determined that there was insufficient evidence presented at the hearing to find Petitioner guilty of the parole violation charge of felon in possession of a firearm or to find that he illegally transferred firearms, pursuant to the federal charge. (The primary witness, Robert Pederson, was not present, and his affidavit was not certified or sufficient by itself to support the charges; Special Agent Ott said he could not testify for sure without his notes, and to state that Tisdale was even the person he observed.) The Commission suspected that Tisdale was guilty, but because there was insufficient evidence of that guilt presented at the hearing, the parole violation charge was dismissed. (Dkt. 54-6.)

Tisdale was still in custody in Utah on November 7, 1990, when Petitioner's counsel interviewed him. (State's Lodging A-6, p. 772.) Tisdale was

released from custody the day before Thanksgiving because he was able to post a bond in the Utah federal court, the Idaho parole violation charge having been dismissed. (Id., pp. 772-73.)

On December 6, 1990, Tisdale testified at Petitioner's trial, having been permitted to travel to Idaho while on bond by the Utah federal court. Tisdale testified that no one had "made any deals with him for testimony," and that he had not "received any consideration for testimony." (State's Lodging A-6, p. 771.) Tisdale testified that, although his "first condition"—dismissal of the Idaho parole violation—had occurred, it occurred because the Idaho Parole Commission had subsequently dismissed it of their own volition. (*Id.*, pp. 775-76.) Tisdale also testified that he had been "charged" with the federal crimes, but had not been prosecuted, had not pleaded guilty or not guilty, and had not been sentenced. (*Id.*, p. 781.)

Tisdale further testified under cross-examination:

| Defense counsel: | Mr. Tisdale, I believe on questioning by Mr. Harris you had indicated that they had made no promises to you or have done nothing to induce you to testify here today. |
|---|---|
| Tisdale: | Well, they were going to attempt to have the parole hold dropped, but the parole board did that by themselves. They just couldn't find enough evidence to sustain it. And so before they could do anything, the parole board had already dropped the parole. So that's how that was. |

| | |
|---|---|
| Defense counsel: | Have they indicated to you that they will attempt to assist you on the current pending charges? |
| Tisdale: | Possibility. |
| Defense counsel: | What is your understanding of the possibility? |
| Tisdale: | If they can help, they will. |
| Defense counsel: | And you will appreciate any help they can give you? |
| Tisdale: | Certainly. |

(*Id*. pp. 783-84.)

Upon further cross-examination, Tisdale continued:

| | |
|---|---|
| Defense counsel: | You would appreciate any assistance you can get on your pending charges? |
| Tisdale: | Certainly. |
| Defense counsel: | Mr. Tisdale, when did you decide to testify in this matter? |
| Tisdale: | When did I? |
| Defense counsel: | Yes. |
| Tisdale: | When I was subpoenaed to be up here at a certain date and time. |
| Defense counsel: | And it's not the result of anything that any authorities have done to assist you in your current situation? |

| Tisdale: | I told you, they haven't done anything to assist me. |
|---|---|

(State's Lodging A-6, p. 785.)

Defense counsel continued his cross-examination of Tisdale and showed that Tisdale had previously said that he would testify if his two conditions were met, and Tisdale agreed that the two conditions had been met, even though he continued to assert that the Idaho Parole Commission dropped the parole violation for lack of evidence, not as consideration for his testimony. (*Id.*, pp. 786-77.) On re-direct examination, the prosecutor elicited testimony from Tisdale that the Idaho Parole Commission actually came to Salt Lake City and conducted a hearing, after which they found that the federal agents had not presented "any conclusive evidence or any evidence at all." (*Id.* at 787.)

Petitioner's trial ended, and he was found guilty of first degree murder on December 13, 1990. (State's Lodging A-2, pp. 458-61.) On January 23, 1991, the Idaho Parole Commission ordered Tisdale to be returned to Idaho, noting that he was being permitted to reside in Utah only temporarily. (Dkt. 54-6, p. 1.) However, after the Commission's session ended, Executive Director Craven was informed that Tisdale's federal bond required him to remain in the state of Utah. (*Id.*) On March 21, 1991, the Commission elected to allow Tisdale to remain in Utah, as a result of the federal bond condition that he not leave Utah. (Dkt. 54-6, pp. 1-2.)

Sometime prior to April 24, 1991, Tisdale pleaded guilty to one federal charge, and his sentencing originally was set for April 24, 1991. (Dkt. 54-6, p. 2.) However, the sentencing was continued to a later date.

On July 2, 1991, Tisdale was finally sentenced. He received 12 months' incarceration, with credit for the 220 days served, followed by 3 years of supervised release; he immediately began serving the remainder of the 12-month sentence in the Davis County Jail in Farmington, Utah. (Dkt. 54-6, p. 4.) On July 25, 1991, the Idaho Parole Commission discharged Tisdale from Idaho parole. (*Id*.)

In its opinion on post-conviction review, the Idaho Court of Appeals noted that the "additional information that Jones contends that counsel was deficient for not discovering was a conversation between Olivia Craven, the Executive Director of the Commission of Pardons and Parole, and the prosecuting attorney regarding Tisdale's pending parole violation charge." (State's Lodging F-11, p. 8.)

The Idaho Court of Appeals noted that, in cross-examining Tisdale, Petitioner's attorney was able to draw out testimony from Tisdale that he had specified to authorities certain preconditions that must be met in order for him to testify, and that those preconditions had been met by the governmental agencies, even though Tisdale claimed that the favorable treatment of the charges and violation was unrelated to his testimony. The Idaho Court of Appeals found no deficiency in the cross-examination. That court further found that no prejudice resulted from the failure to conduct a more thorough investigation to obtain the

information contained in Craven's Affidavit, because the information was simply that the prosecutor had tried, but had failed, to obtain an agreement for leniency in the disposition of the parole violation in consideration for Tisdale testifying against Petitioner. (State's Lodging F-11, pp. 8-9.)

Petitioner is asserting that the Idaho Court of Appeals made a mistake of fact or misunderstood Petitioner's argument because that court did not specifically address any of Petitioner's arguments other than Craven's Affidavit, such as the argument that "Tisdale has testified under oath that he received no consideration at his parole hearing or with regard to his federal charges, and yet competent evidence has been submitted that the opposite is true." (State's Lodging F-1, p. 15.) More specifically, Petitioner had argued in the state district court and submitted evidence that an actual plea offer by federal agents was made to Petitioner before trial. (State's Lodging E-1, pp. 15-16; E-5, Exhibit 24.) However, simply because the Idaho Court of Appeals chose not to directly address Petitioner's entire argument, or the factual basis of his argument, does not mean that the entire record was not, in fact, considered. On that basis, Petitioner is not entitled to § 2254(d)(1) relief; rather, Petitioner has failed to show that the Idaho Court of Appeals's opinion rejecting the entire claim (on whatever basis) is contrary to, or an unreasonable application of, *Strickland*.

However, if the state appellate court factfinding *was* mistaken and the Idaho Court of Appeals did not realize that the government had made an actual plea offer

to Petitioner prior to trial, then this Court must review the claim de novo on all the facts in the state court record to determine if relief is warranted. The United States Supreme Court has determined that a clear factual error "reflects 'an unreasonable determination of the facts'" under § 2254(d)). *Wiggins v. Smith*, 539 U.S. 510, 528 (2003); *see also Taylor v. Maddox*, 366 F.3d 992 (9th Cir. 2004) ("[W]here the state courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable.") *Id*. at 1001 (citing *Wiggins*). When a state court adjudication was based on an unreasonable determination of fact, the reviewing court is to "consider the petitioner's related claim de novo." *Maxwell v. Roe*, 628 F.3d 486, 494-95 (9th Cir. 2010). *See also Jones v. Walker*, 540 F.3d 1277 (11th Cir. 2008) (*en banc*).[4]

---

[4] The *Jones* Court reasoned:

> [W]hen a state court's adjudication of a habeas claim results in a decision that is based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, this Court is not bound to defer to unreasonably-found facts or to the legal conclusions that flow from them.... Because the Georgia Supreme Court unreasonably determined the facts relevant to Jones' Sixth Amendment claim, we do not owe the state court's findings deference under AEDPA. We therefore apply the pre-AEDPA de novo standard of review to Jones' habeas claims."

540 F.3d at 1288 n.5 (quotations, citations, and alterations omitted).

Reviewing all of the facts in the state court record, the Court finds that the inherent difficulty with Petitioner's claim is that he is looking at Charles Tisdale's circumstances from hindsight, including now having knowledge of what happened in Tisdale's Utah and Idaho cases after trial. Petitioner has submitted a great deal of information showing the facts and possibilities of leniency available to Tisdale for testifying at Petitioner's trial. Although the trial was held in December 1990, Petitioner submits records showing that Tisdale was sentenced for a federal charge of illegal transfer of a firearm and was discharged from state parole in July 1991. These records obviously were unavailable to Petitioner's counsel prior to trial.

What the records contemporaneous to trial *do* show is that the Canyon County Prosecutor was attempting to obtain leniency for Tisdale from two jurisdictions. At the time of trial, it appeared that the federal government had cooperated, but the state government had not. The federal plea agreement was apparently contingent upon the state agreement. The records themselves, had they been obtained by counsel, show that there was an offer but no finalized agreement between Petitioner and the federal agents. The Craven Affidavit makes it clear that the State had said "no deal"–and that was brought out by the prosecutor's examination of Petitioner. While the prosecutor knew that he had tried to work a deal with the federal government, that deal was contingent upon Petitioner being released by the state of Idaho, which the state refused to do, for the purpose of providing testimony. Rather, the state eventually released Petitioner due to lack of

evidence on the federal charges after the Parole Commission conducted a hearing in Utah. The testimony of Tisdale reflects that deals were *in the works* as a result of his *anticipated* cooperation, but that he had not actually received anything for testifying:

| | |
|---|---|
| Prosecutor: | Are you under an indictment or under investigation for anything currently? |
| Tisdale: | I am. |
| Prosecutor: | Is that how you came to have the conversation with the ATF people? |
| Tisdale: | Yes, sir, it is. |
| Prosecutor: | And is that how come you revealed your acquaintenceship with Al Martinez, the Defendant Jones and this Frank Helm? |
| Tisdale: | Yes. |
| Prosecutor: | As a result of disclosing information concerning this case, has anyone made any deals with you for testimony? |
| Tisdale: | No. |
| Prosecutor: | Have you received any consideration for testimony? |
| Tisdale: | No. |

(State's Lodging A-6, p. 771.)

Contrary to Petitioner's argument, the facts in the October 1990 report show little more than cross-examination brought out at trial—that a deal was started, but not finished at the time of trial; therefore, Tisdale had not "received" any

consideration for testifying at the time he testified. As a result, Petitioner has not

shown that failure to discover the report was prejudicial to the defense. The report

suggests that, without cooperation from Idaho's Parole Commission, Tisdale could

not accept the federal plea bargain. The Craven Affidavit suggests that Idaho

would not cooperate. Tisdale testified that the federal agents were going to do all

that they could to get him a good deal, and that a deal was a possibility—this

testimony is reflective of the facts in the missing pieces of evidence.

In addition to the foregoing, the trial transcript shows that Petitioner's

attorney had traveled to Utah to interview Tisdale prior to trial. (State's Lodging

A-6, p. 772) Petitioner's attorney also devoted a fair amount of his cross-

examination to probing Tisdale's reasons for testifying and exposed the fact that

Petitioner had laid down conditions to testify, and those conditions had been met,

regardless of the reasons the government gave to justify the fulfillment of those

conditions. (*Id.*, pp. 772-87; 788-89.)

Based on the facts placed before the Idaho Court of Appeals, and under a de

novo standard of review, the Court concludes that Petitioner has not shown

prejudice, such that *Strickland* was violated. Therefore, federal habeas corpus

relief under § 2254(d)(1) is unwarranted.

### E.     *Claim B(2)*

In Claim B(2), Petitioner contends his trial attorney was ineffective for

failing to "properly cross-examine Wystrach on at least 15 points of perjured

testimony." (Dkt. 19, p. 8.) This is one of the claims on which Petitioner has chosen not to make further argument.

The Idaho Court of Appeals examined the trial transcript to determine whether Petitioner's trial attorney had been deficient in cross-examination of Wystrach, the leading witness for the prosecution. The Idaho Court of Appeals summed up Petitioner's contentions as failing to impeach Wystrach about her "inconsistent statements regarding the number of meetings between Jones and the individual who hired him, the specific contract amount, the timing of the final payment, her presence during the final payment, details about surveillance of the victim prior to the crime, which vehicle was used the night of the murder, the identity of the driver and passengers of the vehicle, the events of the day after the murder, and whether Wystrach had threatened the individual who had ordered the murder." (State's Lodging F-11, p. 10.)

After reviewing the trial testimony, the Court of Appeals determined:

> Contrary to Jones's assertions, the trial transcript clearly shows that defense counsel did cross-examine and impeach Wystrach on a number of these subjects, as well as many others. (Tr. p. 607-744; 754-762.) To the extent that counsel did not draw out every inconsistent statement that Wystrach had made, that is a trial tactic or strategy choice that we will not second-guess without evidence of inadequate preparation, ignorance of the relevant law, or other shortcomings capable of objective evaluation. Counsel's cross-examination of Wystrach was extensive, and demonstrates more than adequate preparation and investigation. Jones has not made a prima facie showing that counsel was deficient in his tactical decisions about how best to impeach Wystrach during cross-examination.

(State's Lodging F-11, p.10.)

Respondent argues that Petitioner has not shown deficient performance or prejudice, failing to meet either prong of the *Strickland* ineffective assistance of counsel test, even under a de novo review standard. The Court agrees. The record does reflect that counsel extensively cross-examined Wystrach, showing that he adequately investigated Wystrach and prepared for cross-examination. (State's Lodging A-6, pp. 607-744; 754-60; 761-62.) Counsel hit upon Wystrach's extensive history of drug and alcohol abuse, including the fact that it has been hard for her to recall events in her life because of her alcohol abuse; upon the fact that she may have refreshed her recollection of the incident with newspaper articles; upon letters manifesting Wystrach's love for Petitioner and desire to continue a relationship with him during the same time period she accused him of domestic violence and the murder of Troy Vance; upon her immunity agreement for her testimony; upon her receipt of over $6,000 in living expenses payments for her testimony from the state; upon her inquiry into the $50,000 reward for information leading to the arrest of a suspect in the Troy Vance case; upon how she had no real means of supporting herself; and upon inconsistencies in her testimony about the murder and payment for the murder.(*Id.*)

Petitioner points to no serious deficiency in his counsel's cross-examination that creates a reasonable probability that the outcome of his trial would have been

different. Broad deference must be given to counsel's performance at trial, as the

*Richter* Court emphasized:

> *Strickland* does not guarantee perfect representation, only a
> "'reasonably competent attorney.'" 466 U.S. at 687, 104 S.Ct. 2052
> (quoting *McMann v. Richardson*, 397 U.S. 759, 770, 90 S.Ct. 1441,
> 25 L.Ed.2d 763 (1970)); *see also Gentry, supra*, at 7, 124 S.Ct. 1.
> Representation is constitutionally ineffective only if it "so
> undermined the proper functioning of the adversarial process" that
> the defendant was denied a fair trial. *Strickland, supra*, at 686, 104
> S.Ct. 2052. [T]here is no expectation that competent counsel will be
> a flawless strategist or tactician. . . .

131 S.Ct. at 791. Because Petitioner has failed to meet the de novo standard, it is

clear he cannot meet the "double deference" standard of § 2254(d)(1). *See Richter*,

131 S.Ct. at 788. Accordingly, this claim fails to merit habeas corpus relief.

### F. *Claim B(4)*

In Claim B(4), Jones contends trial counsel failed to adequately object to

the introduction into evidence of other crimes, wrongs, or acts and failed to timely

object to privileged testimony from Wystrach's doctor about marital conversations

surrounding an uncharged murder Petitioner allegedly had committed. (Dkt. 19,

p.8.) At trial, the prosecution called Arthur Hamblin, Wystrach's psychologist, to

testify. Dr. Hamblin testified that, in a counseling session, Wystrach stated that

Petitioner had "murdered someone." (State's Lodging A-7, pp. 900-06.)

On direct appeal, the Idaho Supreme Court determined that the testimony of

Dr. Hamblin was improperly admitted under Idaho Rule of Evidence 403, but that

the error was harmless. (State's Lodging B-11, p. 13.) The Idaho Supreme Court

reasoned: "The most that the complained of testimony could have contributed was to bolster the credibility of Wystrach. The jury had ample other opportunity to discern the credibility of Wystrach and weigh it against that of appellant." (*Id*.)

Petitioner attempted to use this direct appeal ruling as a springboard for an ineffective assistance of counsel claim on post-conviction review, but the Idaho Court of Appeals determined that because the testimony was harmless, Petitioner failed to show prejudice under *Strickland*. (State's Lodging F-11, p. 12.) Here, Respondent aptly points out that counsel did, in fact, object to Dr. Hamblin's testimony, but the trial court overruled the objection, concluding that the testimony could be admitted to corroborate Wystrach, "whose credibility had been attacked on cross-examination." (State's Lodging A-7, pp. 901-04.) Accordingly, Petitioner has failed to show the counsel could have done more to prevent introduction of the evidence; rather, once an objection is made and denied, then the issue becomes one for appeal. Neither deficient performance or prejudice under *Strickland* has been shown; therefore, Petitioner meets neither the de novo standard of *Strickland* or the "doubly deferential" standard of AEDPA.

## G.    *Claim B(5)*

Claim B(5) is that Petitioner's direct appeal counsel performed ineffectively when "he failed to 'technically' appeal Jones' first motion for new trial, thereby causing Jones a loss of several issues and points of fact." (Dkt. 19, p.8.) Petitioner asserted in his first motion for a new trial "that he had discovered new evidence

that Wystrach had been growing marijuana at the time of trial, in contradiction of her testimony that she was no longer involved in drugs or alcohol, and that the prosecution knew or should have known of this and nevertheless elicited this perjury." (State's Lodging F-11.)

The *Strickland* principles also apply to determining ineffective assistance of appellate counsel claims. To show prejudice on appeal, a petitioner must show that his attorney failed to raise an issue obvious from the trial record that probably would have resulted in reversal. *See Miller v. Keeney*, 882 F.2d 1428, 1434 n.9 (9th Cir. 1989). If a petitioner does not show that an attorney's act or omission would have resulted in reversal, then he cannot satisfy either prong of *Strickland*: appellate counsel was not ineffective for failing to raise such an issue, and petitioner suffered no prejudice as a result of it not having been raised. *See Miller*, 882 F.2d at 1435.

"Effective legal assistance" does not mean that appellate counsel must appeal every question of law or every nonfrivolous issue requested by a criminal defendant. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). "[N]othing in the Constitution" requires "judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable claim' suggested by a client." *Id.*, 463 U.S. at 754.

Addressing this claim, the Idaho Supreme Court decided:

To the extent that Jones argues that, had counsel properly appealed, he would have been entitled to a new trial because of prosecutorial misconduct, this argument is unavailing because the only grounds upon which a new trial may be granted in a criminal case are those set forth in I.C. § 19-2406, which do not include prosecutorial misconduct. *Jones II*, 127 Idaho at 481, 903 P.2d at 70. If his argument is that, had counsel properly appealed, he would have been entitled to a new trial because of newly discovered evidence that part of Wystrach's testimony had been perjurious, this argument also fails because, for the purposes of a motion for a new trial, newly discovered evidence must be material and not merely impeaching. *State v. Drapeau*, 97 Idaho 685, 691, 551 P.2d 972, 978 (1976). Jones has not shown ineffective assistance from counsel's decision not to appeal the denial of Jones's first motion for a new trial.

(State's Lodging F-11, p. 13.)

Idaho Code § 19-2406 provides an exclusive list of grounds for the granting

of a new trial; prosecutorial misconduct is not among the enumerated grounds.[5]

*See State v. Weise*, 410, 273 P.2d 97, 100 (1954) ("The grounds for a new trial are

purely statutory. The court cannot provide any other ground.") The Idaho Supreme

---

[5] Grounds for a new trial set forth in the statute are as follows:

(1) When the trial has been had in [the defendant's] absence, if the indictment is for a felony; (2) When the jury has received any evidence out of court other than that resulting from a view of the premises; (3) When the jury has separated without leave of the court after retiring to deliberate upon their verdict, or been guilty of any misconduct by which a fair and due consideration of the case has been prevented; (4) When the verdict has been decided by lot or by any means other than a fair expression of opinion on the part of all the jurors; (5) When the court has misdirected the jury in a matter of law, or has erred in the decision of any question of law arising during the course of the trial; (6) When the verdict is contrary to law or evidence; (7) When new evidence is discovered material to the defendant, and which he could not with reasonable diligence have discovered and produced at the trial.

Court has decided that, under the statute, new evidence must not be mere

impeachment evidence. *State v. Drapeau*, 551 P.2d 972, 978 (1976).

Based on the foregoing law, in light of the *Strickland* standard, Petitioner's

direct appeal counsel did not perform deficiently in failing to raise the *Brady*

claims in a motion for a new trial, nor did prejudice accrue, because such a claim

would have had no basis in law. It is not necessary to look through the "double

deferential lens" of § 2254(d)(1), because there is no room for debate that the

Idaho Supreme Court's decision confirming that a motion for new trial was not the

proper vehicle for this type of claim is correct. Therefore, Petitioner is not entitled

to relief on this claim.

> ### H.   *Claim B(6)*

Claim B(6) is that his counsel "was ineffective and contributed to the jury's

decision to convict when he failed to complain of the missing portion of the record

containing the closing arguments of the prosecutor further suborning the perjury of

Charles Tisdale." (Dkt. 19, p.8.) This claim is better explained in Petitioner's

second amended state post-conviction petition:

> Counsel was ineffective in that counsel received and review
> [sic] the record on appeal and passed such record. Such record is
> absent of the closing remarks of the Prosecuting Attorney. In that the
> Petition was raising allegations of prosecutorial misconduct. The
> closing argument by the Prosecuting Attorney is and was an essential
> portion of the record. Petitioner informed counsel of this missing
> portion of the record and counsel failed to timely request that a
> complete trial record be supplied to the Appellate Court. Exhibit

"A", tab 9. That had the Appellate Court had the entire trial record
before it the outcome would have been different.

(State's Lodging E-2, p. 238.)

Because failure of counsel to provide the closing argument portion of the

trial transcript to the appellate courts has nothing to do with "contributing to the

jury's decision to convict," as the conviction obviously occurred before direct

appeal proceedings, the Court construes this claim as one that direct appeal

counsel should have included the initial closing argument of the prosecutor in the

record on direct appeal, rather than only the prosecutor's final closing argument.

(State's Lodging A-11, pp. 1509-15.)

In considering the appeal of the dismissal of the second amended post-

conviction petition, the Idaho Court of Appeals addressed the omitted portion of

the transcript in a footnote, determining that, because neither Petitioner nor his

counsel provided the initial closing argument to the state district court during post-

conviction proceedings, the appellate court could not consider it as support for

Petitioner's claim that his trial counsel was ineffective for failing to object to the

improper remarks made during closing argument. (State's Lodging F-11, p. 14

n.4.) The Court of Appeals did not address the failure to provide the transcript as a

separate claim, and it is unclear whether it was a topic addressed in Petitioner's

appellate brief (State's Lodging F-1.) This Court previously determined that it

would first review the merits of this claim de novo, and then, if the claim had any merit, revisit the procedural default issue.

The two statements of the prosecutor made during closing argument about the testimony of Charles Tisdale that form the basis of Petitioner's claim are as follows: (1) "Charles Tisdale, who came and testified as to admissions made to him by this defendant is corroborative evidence that supports, validates, and confirms the testimony of Sherry Wystrach" (State's Lodging F-15, Exhibit R-3, p.4); and (2) "Her testimony is confirmed by Charles Tisdale" (*id.*, p.15). Both statements are from the omitted initial closing statement of the prosecutor.

The trial court record reflects that several jury instructions explained the purpose of closing arguments to the jury. The first instruction explained, "You must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you and according to the law in accordance with your oath to do so." (State's lodging E-4, Exhibit 68, Jury Instruction 1, p.1.) The jury was expressly advised it must decide the facts from evidence which "will consist of the testimony of witnesses, documents and other things received into evidence as exhibits and any facts on which the lawyers agree or which I may instruct you to accept." (*Id.*, Jury Instruction 1, p.2.) The jury was further advised, "Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they say in their opening statements, closing arguments, and at other times is intended to help you

to interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers state them, your memory of them controls." (*Id.*)

On federal habeas corpus review, the scope of the issue regarding prosecutorial misconduct during trial argument is a "narrow one of due process, and not the broad exercise of supervisory power" that is a matter of state law. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). A prosecutor's comments or actions that may be considered inappropriate under the rules of fair advocacy, or even reversible error on direct review, do not warrant habeas relief unless the alleged misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly*, 416 U.S. at 643.

Here, Petitioner's argument is that, if, on direct appeal, the appellate court would have had the two statements of the prosecutor included in the record before it, Petitioner's claim for prosecutorial misconduct would have been successful on appeal. Petitioner has failed to show that the two statements so infected the trial with unfairness such that a due process violation occurred. Both statements argue that Tisdale corroborated Wystrach's testimony. Both statements are fair argument based on the record. Wystrach testified that Petitioner was hired to kill Troy Vance, made preparations to kill him, appeared to have gone to kill Vance on the night in question, and received payment for killing Vance; while Tisdale said that Petitioner confessed the killing to Tisdale while Petitioner and Tisdale were in

prison together. Issues affecting the credibility of both of these witnesses was a matter for the jury to decide after hearing all of the evidence and considering the arguments of counsel, in light of the specific jury instructions addressing the difference between evidence and argument.

The Court also considers whether the two statements of argument that Tisdale corroborated Wystrach's testimony in the content of the other prosecutorial statement that Petitioner objects to, a statement that *was* provided in the transcript on direct appeal: "And Tisdale came forward with information and admissions, and the record is that there is – there's nothing to gain by it. And the record is that it is the abnormality of the situation. Cons don't rat on cons, that's part of the unwritten code. But occasionally it happens" (State's lodging A-11, p.1510). This statement, added to the two others discussed above, does not clearly tip the prosecutor's statements over the edge of the line from a matter of trial court discretion to one of due process. As noted above, the testimony of Tisdale reflects that deals were *in the works* as a result of his *anticipated* cooperation, but that he had not actually received anything, or finalized an agreement with either the state or the federal government, as a result of agreeing to testify at the time of trial. That the prosecutor also pointed out that the testimony of Wystrach and Tisdale both pointed to Petitioner as the murderer is something the jury naturally would have been considering from the evidence presented at trial.

Petitioner has failed to show that any prejudice occurred as a result of counsel failing to include the omitted portions of the prosecutor's closing argument in the record on direct appeal. Accordingly, the claim does not warrant federal habeas corpus relief under a de novo application of the due process standards set forth above.

I.      *Claims E(5) & E(6)*

In claims E(5) and (6), Petitioner contends the prosecutor presented false evidence from Wystrach regarding Petitioner having committed another murder in Nevada, people with whom he was involved in Seattle having been arrested for "methamphetamine activity," and Wystrach having been free of drugs and alcohol "for the past one and two years respectively." (Dkt. 19, p.12.)

Specifically, at the sentencing hearing Wystrach testified to the following: (1) Petitioner's involvement in a "methamphetamine lab to produce methamphetamine" with Al Martinez and Ken Hegge (State's Lodging A-12, pp.192-200); (2) Petitioner having committed another murder in Nevada (*id*., pp. 203-04); and, (3) that Wystrach was "no longer under any influence of any drugs or alcohol. I will be completely clean from alcohol as of July 1st for one year. Prior to any prescription drugs for almost two years now. So I am no longer under the influence of any substances." (*Id*., pp. 215-16).

On direct appeal, the Idaho Supreme Court construed this claim as one "attack[ing] the fairness and neutrality of the sentencing process." (State's

Lodging B-11, p. 16.) The Idaho Supreme Court determined that, on the record, the trial court "properly and fairly weighed the evidence," and "properly entertained and resolved" Petitioner's objections to the presentence investigation report. (*Id.*)

In *Napue v. Illinois*, 360 U.S. 264 (1959), the United States Supreme Court held that the prosecution (1) cannot present evidence it knows is false and (2) must correct any falsity of which it is aware. *Id.* at 269. A claim that the prosecution knew that a witness perjured himself is cognizable under 28 U.S.C. § 2254(d)(1), but a petitioner must establish that the prosecutor knew that testimony was false. *See Napue*, 360 U.S. at 269. A conviction meets the *Napue* test and a writ will issue if there is a showing that (1) the prosecution knowingly presented false evidence or testimony at trial, and (2) that the testimony was material, meaning there is a reasonable likelihood that the false evidence or testimony could have affected the judgment of the jury. *See Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (*en banc*).

The *Napue* rule, cited above, is applicable to the sentencing phase of a criminal case. *See Evans v. Virginia*, 471 U.S. 1025, 1028 (1985). The usual remedy for the knowing use of false evidence by the prosecutor at sentencing is a new sentencing hearing. *Id.* The United States Supreme Court has determined that if a court finds that a constitutional violation occurred under *Brady v. Maryland*,

which is similar to *Napue*, the court need not conduct a harmless error analysis. *Kyles v. Whitley*, 514 U.S. at 435.

It is unclear whether the Idaho Supreme Court applied *Napue*, or some broader standard of due process, in considering the sentencing record as a whole. However, a state court need not "give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Richter*, 131 S.Ct. at 770.

Petitioner has not shown that the prosecution knew that the evidence was false. The marijuana plants were found several weeks after Petitioner testified that she was drug free, and she told the State's investigator that the plants belonged to O'Driscoll, not her. Neither does Petitioner point to evidence in the record showing that he was not involved in illegal drugs or did not previously kill someone in Nevada *and* that the prosecutor knew that.

As to Wystrach's sentencing hearing testimony given in the first half of the sentencing hearing, the trial court indicated to the parties prior to the second half of the sentencing hearing:

> I can tell you right now that what little testimony that she gave at the so-called sentencing hearing wouldn't make a pinch of salt as far as difference to me because what I look for in the question of whether the – the aggravating factors are is the evidence I heard at trial.
>
> Her casual opinions, or offhand views are not significant to me at all.

(State's Lodging A-12, p. 227.)

While the prosecution sought the death penalty in Petitioner's case, based on all of the evidence, the sentencing court declined to sentence Petitioner to death, but gave him a life sentence in prison. Thus, Petitioner has not shown any reasonable likelihood that the Wystrach sentencing testimony could have affected his sentence.

Therefore, Petitioner has failed to meet either prong of the *Napue* test. Neither does his claim succeed as a general due process claim, as decided by the Idaho Supreme Court. Consequently, this claim does not merit federal habeas corpus relief.

## CONCLUSION

Having addressed all of Petitioner's remaining claims, the Court concludes that Petitioner has failed to meet his burden to show that federal habeas corpus relief is warranted. As a result, Respondents' Motion for Summary Judgment will be granted, and Petitioner's Petition will be dismissed with prejudice.

## REVIEW OF THE CLAIMS AND THE COURT'S DECISION
## FOR PURPOSES OF CERTIFICATE OF APPEALABILITY

In the event Petitioner files a notice of appeal from the Order and Judgment in this case, the Court now evaluates the claims within the Petition for suitability for issuance of a certificate of appealability (COA), which is required before a habeas corpus appeal can proceed. 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); Rule 11(a), Rules Governing Section 2254 Cases.

A COA will issue only when a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court has explained that, under this standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.*" Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal citation and punctuation omitted).

When a court has dismissed a petition or claim on procedural grounds, in addition to showing that the petition "states a valid claim of the denial of a constitutional right," as explained above, the petitioner must also show that reasonable jurists would find debatable whether the court was correct in its procedural ruling. *Slack,* 529 U.S. at 484. When a court has dismissed the petition or claim on the merits, the petitioner must show that "reasonable jurists would find

the district court's assessment of the constitutional claims debatable or wrong." *Id.*

at 484. The COA standard "requires an overview of the claims in the habeas

petition and a general assessment of their merits," but a court need not determine

that the petitioner would prevail on appeal. *Miller-El*, 537 U.S. at 336.

Here, the Court has dismissed some of Petitioner's claims on procedural

grounds, and some on the merits. The Court finds that additional briefing on the

COA is not necessary. Having reviewed the record again, the Court concludes that

reasonable jurists would not find debatable the Court's decision on the procedural

issues and the merits of the claims raised in the Petition and that the issues

presented are not adequate to deserve encouragement to proceed further. As a

result, the Court declines to grant a COA on any issue or claim in this action.

If he wishes to proceed to the United States Court of Appeals for the Ninth

Circuit, Petitioner must file a notice of appeal in this Court, and simultaneously

file a motion for COA in the Ninth Circuit Court of Appeals, pursuant to Federal

Rule of Appellate Procedure 22(b), **within thirty (30) days after entry of this**

**Order**.

# ORDER

**IT IS ORDERED:**

1.     Respondent's Motion for Summary Judgment (Dkt. 45) is

2.     Respondent's Motion for Leave to File Excess Pages (Dkt. 46) is GRANTED.

3.     Petitioner's First and Second Motions for Enlargement of Time to File Response to Motion for Summary Judgment (Dkt. 49, 51) are GRANTED.

4.     Docket Nos. 54-8 through 54-28, which were mistakenly filed in ths case, are STRICKEN from the record.

5.     The Court will not grant a Certificate of Appealability in this case. If Petitioner chooses to file a notice of appeal, the Clerk of Court is ordered to forward a copy of this Order, the record in this case, and Petitioner's notice of appeal, to the United States Court of Appeals for the Ninth Circuit.

DATED: March 23, 2012

_____

Honorable Mikel H. Williams
United States Magistrate Judge